**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

STEPHEN FLANAGAN, as a Trustee of the
General Building Laborers' Local 66 Vacation
Fund, STEPHEN FLANAGAN, as a Trustee of the
General Building Laborers' Local 66 Pension Fund,
STEPHEN FLANAGAN, as a Trustee of the
General Building Laborers' Local 66 Welfare Fund,
STEPHEN FLANAGAN, as a Trustee of
the General Building Laborers' Local 66 Annuity
Fund, STEPHEN FLANAGAN, as a Trustee of the
General Building Laborers' Local 66 Employer
Cooperative and Educational Trust Fund,
STEPHEN FLANAGAN, as a Trustee of the
General Building Laborers' Local 66 Greater NY
Laborers' Employer Cooperative and Educational
Trust Fund, STEPHEN FLANAGAN, as a Trustee
of the General Building Laborers' Local 66 Training
Program, STEPHEN FLANAGAN, as a Trustee of
the General Building Laborers' Local 66 New York
State Health and Safety Fund, and STEPHEN
FLANAGAN, as Business Manager of General
Building Laborers' Local Union No. 66 of the
Laborers' International Union of North America,
AFL-CIO,

**REPORT AND**
**RECOMMENDATION**
CV 19-0415 (JS) (AKT)

Plaintiff,

- against -

T.R WHITNEY INC. and RICHARD D.
WHITNEY,

Defendants.

-------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

Plaintiff Stephen Flanagan ("Plaintiff"), in his capacity as Trustee and fiduciary of at

least eight employee benefit plans, commenced this action against the corporate Defendant T.R.

Whitney Inc. ("T.R. Whitney") and individual Defendant Richard D. Whitney ("Richard

Whitney") (collectively, "Defendants") alleging violations of the Employee Retirement Income Security Act of 1974,  29 U.S.C. §§ 1001, *et seq.* ("ERISA").  *See generally* Complaint ("Compl.") [DE 1].  As a result of Defendants' failure to answer or otherwise respond to the Complaint, the Clerk of the Court entered a Certificate of Default against the Defendants on June 5, 2019, pursuant to Federal Rule of Civil Procedure 55(a).  *See* DE 19.

On December 10, 2019, Plaintiff filed a motion for entry of default judgment against Defendants.  *See* Plaintiff's Request to Enter Default Judgment ("Pl.'s Mot.") [DE 21].  Judge Seybert referred the motion to this Court for a Report and Recommendation as to whether "the pending motion should be granted and, if necessary, to determine the appropriate amount of damages, costs, and/or fees to be awarded."  Electronic Order dated December 11, 2019.  For the reasons which follow, the Court respectfully recommends to Judge Seybert that Plaintiff's motion be GRANTED in part and DENIED in part.

II.    **BACKGROUND**

A.    **Factual Background**

The following facts are taken from the Complaint, unless otherwise stated, and are accepted as true for purposes of the instant motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Plaintiff is the Trustee and fiduciary of eight fringe benefit funds, including the General Building Laborers' Local 66 Vacation Fund, General Building Laborers' Local 66 Pension Fund, General Building Laborers' Local 66 Welfare Fund, General Building Laborers' Local 66 Annuity Fund, General Building Laborers' Local 66 Employer Cooperative and Educational Trust Fund, General Building Laborers' Local 66 Greater NY Laborers' Employer Cooperative and Educational Trust Fund, General Building Laborers' Local 66 Training Program, and General Building Laborers' Local 66 New York State Health and Safety Fund

2

("Fringe Benefit Funds" or the "Funds"). *Id*. ¶ 4. Each of the Funds is an "employee benefit plan" and "multiemployer plan" within the meaning of the applicable sections of ERISA. *Id*. T.R. Whitney is a for-profit domestic corporation engaged in the building and construction industry in Nassau and Suffolk Counties, New York. *Id*. ¶¶ 6, 8. The company is a New York corporation with its principal place of business in East Quogue, New York, and is an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). *Id*. ¶ 6. Richard Whitney is an "officer and/or director and/or shareholder and/or agent of the corporate Defendant [T.R. Whitney]." *Id*. ¶ 7. Plaintiff alleges that Richard Whitney is also an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). *Id*.

T.R. Whitney executed a Collective Bargaining Agreement ("CBA") with General Building Laborers' Local Union No. 66 ("the Union"). *Id*. ¶ 9. The CBA incorporates by reference the terms of the Agreements and Declarations of Trust of the Fringe Benefit Funds ("Declarations of Trust") (collectively with the CBA, "the Agreements") and designates the Fringe Benefit Funds as third-party beneficiaries to the CBA. *Id*. Pursuant to the Agreements, T.R. Whitney is required to:

    (a)   pay contributions to the Funds on behalf of its employees, at the rates and times set forth in the Agreements;

    (b)   submit contribution reports to the Funds;

    (c)   permit and cooperate with the Funds in the conducting of audits of its book and records; and

    (d)   in the event the contractor fails to timely pay required contributions, it is obligated to pay

        i.   interest from the date such delinquent contributions were due until the date of payment;

        ii.   liquidated damages in the amount equal to the interest on the delinquent contributions; and

        iii.   all costs and attorneys' fees incurred by the Funds.

*Id*. ¶ 15.

According to the Complaint, from January 7, 2013 through March 26, 2013, T.R. Whitney failed to make contributions to the Fringe Benefit Trust Funds in the total amount of $15,828.79.  *Id.* ¶ 20.  T.R. Whitney was notified of its delinquencies but failed to pay any of the fringe benefit contributions owed.  *Id.* ¶ 23.  As such, Plaintiff instituted the instant action seeking unpaid contributions in the amount of $15,828.79, interest and liquidated damages on those contributions, reasonable attorney's fees and costs, and a permanent injunction seeking to enjoin Defendants from failing or refusing to pay contributions it owes pursuant to Section 502(g)(2)(E) of EIRSA.  *Id*. ¶¶ 20-22, 24.

### B.    Procedural Background

On January 22, 2019, Plaintiff commenced this action against Defendants.  *See Generally* Compl.  Service of the Summons and Complaint was thereafter effectuated on Defendants on February 1, 2019 and March 23, 2019.  *See* DE 6–7.  As a result of Defendants' failure to timely answer or otherwise respond to the Complaint, Plaintiff requested that a Certificate of Default be entered by the Clerk of the court and the Certificate was entered on June 5, 2019, pursuant to Rule 55.  *See* DE 16, 19.  Plaintiff moved for entry of default judgment against Defendants on November 8, 2019.  *See* DE 21.  Plaintiff's motion seeks an award of $15,828.79 in unpaid contributions, $3,142.10 in interest, $3,165.75 in liquidated damages, $1,750 in attorneys' fees, and $880.00 in costs.[1]  *Id*.  In support of the motion for default judgment, Plaintiff submitted, among other things, the Declaration of William T. LaVelle, Esq. ("LaVelle Decl.") [DE 21 at 8-12] and the Declaration of Allen Marmor, Fringe Benefit Funds Manager for Local 66 ("Marmor Decl.") [DE 21 at 13-16], as well as the exhibits attached to those declarations.  The

---

[1]    The Court notes that the Complaint seeks injunctive relief against the Defendants. However, Plaintiff did not move for such relief in the instant motion.  Therefore, the Court need not address the request for injunctive relief.

Court notes that Plaintiff's motion does not comply with Local Rule 7.1 in that it does not contain, among other things, a memorandum of law, setting forth the cases and other authorities relied upon in support of the motion. A party's failure to comply with Local Rule 7.1 on a motion for default judgment may warrant "sanctions, including denying the motion in its entirety or a reduced fee award." However, the Court in its discretion will proceed with a determination of the motion in this instance because Plaintiff's submissions provide a sufficient basis for the Court to determine damages and there is no apparent prejudice to Defendants since Plaintiff articulated the relief sought, albeit solely in the declarations submitted. *See Wider Consol., Inc. v. Vision Prod. Co*., No. 17-CV-3427, 2018 WL 1320685, at *3 (E.D.N.Y. Feb. 22, 2018), *report and recommendation adopted,* No. 17-CV-3427, 2018 WL 1320664 (E.D.N.Y. Mar. 13, 2018) ("This absence of a memorandum of law that comports with the requirements of Rule 7.1 could alone form a basis for denying Plaintiff's motion. Certainly, this Court has discretion to overlook failure to comply with local rules.") (internal quotations marks and citations omitted); *Sullivan v. Marble Unique Corp.,* No. 10-CV-3582, 2011 WL 5401987, at *4 n.2 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, No. 10-CV-3582, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011) ("Plaintiffs' counsel did not include a memorandum of law as required by Local Civil Rule 7.1. Failure to do so in the future may lead to sanctions, including denying the motion in its entirety or a reduced fee award."). Further, the unpaid contributions asserted here amount to a comparatively small sum.

On December 11, 2019, Judge Seybert referred Plaintiff's motion for default judgment to this Court for a Report and Recommendation as to whether the motion "should be granted and, if necessary, to determine the appropriate amount of damages, costs, and/or fees to be awarded." December 11, 2019 Electronic Order.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55 establishes a two-step process for obtaining a default judgment against a defaulting party.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co.*, 1:19-cv-414, 2020 WL 871220, at *2 (N.D.N.Y. Feb. 21, 2020).  First, a plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend."  Fed. R. Civ. 55(a).  Second, upon obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)."  *New York v. Green*, 420 F.3d at 104.  The decision to grant a motion for default judgment is left to the sound discretion of the district court.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)).

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-CV-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)).  A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC,* No. 12-CV-5986, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc.*, 973 F.2d at 158).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC,* No. 13-CV-4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.,* No. 08-CV-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014)); *Local 1922 Pension Fund v. Broadway Electric Supply, Co., Inc.,* CV 19-2344, 2020 WL 1931635, at *4 (E.D.N.Y. Mar. 18, 2020); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).  Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see also Said v. SBS Elecs., Inc.*, No. 08-CV-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading."), *adopted as modified on unrelated grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default."  *Krevat*, 2014 WL 4638844, at *5 (citation omitted).  "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'"  *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring*

*Experts, Inc.*, No. 12-CV-6317, 2013 WL 4042357, at \*2 (E.D.N.Y. Aug. 8, 2013), r*eport and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see also Reliance Commc'ns LLC v. Retail Store Ventures, Inc.,* No. 12-CV-2067, 2013 WL 4039378, at \*2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp*., No. 02-CV-9044, 2003 WL 1960584, at \*2 (S.D.N.Y. Apr. 25, 2003)).

IV.   **DISCUSSION**

   A.   **Default Judgment**

      *1.   Willfulness*

When a defendant is continually and "entirely unresponsive," the defendant's failure to respond is considered willful.  *See Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738 at \*3 (E.D.N.Y. Jan. 28, 2013); *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-14226, 2008 WL 5560868, at \*2 (S.D.N.Y. Oct. 27, 2008) (citing *Duce Constr. Corp*., 2003 WL 1960584, at \*2).  Under the present facts, Defendants' failure to respond to the Complaint sufficiently demonstrates willfulness.  *See, e.g., Elgard Corp. v. Brennan Const. Co.*, 248 Fed. Appx. 220, 222 (2d Cir. 2007); *McFarlane v. Harry's Nurses Registry,* 17 CV 06350, 2020 WL 1643781, at \*16 (E.D.N.Y. Apr. 2, 2020); *W. Coast 2014-7, LLC v. Portillo-Pena*, No. 15-CV-6036, 2016 WL 4506749, at \*5 (E.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, No. 15-CV-6036, 2016 WL 4507003 (E.D.N.Y. Aug. 26, 2016).

In the instant action, Plaintiff has submitted Affidavits of Service demonstrating that Defendants were duly served with the Summons and Complaint.  *See* DE 6-7.  Despite service having been properly effectuated, neither of the Defendants answered nor responded in any way

to the Complaint, nor did they request an extension of time to do so.  Further, Defendants were served with the instant motion by first class mail on December 10, 2019 yet have failed to respond to the motion.  *See* Certification of Service for Default Judgment [DE 22].  There is no indication that Defendants' failure to respond to the Complaint, despite being properly served, was anything but deliberate and willful.  *See, e.g., S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998); *Indymac Bank*, 2007 WL 4468652, at *1; *DiPaolo,* 466 F. Supp. 2d at 482.

### 2.    *Meritorious Defense*

Turning to the next factor, the Court is unable to make a determination whether Defendants have a meritorious defense since no such defense has been presented to the Court. *See Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Duce Constr. Corp.*, 2003 WL 1960584, at *2); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. March 12, 2012).  Although Defendants' default constitutes an admission of all the factual allegations contained in the Complaint as they relate to liability, Plaintiff must nevertheless demonstrate that the uncontested allegations set forth valid claims.  *See Said*, 2010 WL 1265186, at *2 (collecting cases); *LG Capital Funding, LLC v. FLASR, Inc.*, 422 F. Supp. 3d 611, 623 (E.D.N.Y. 2018) ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

As an initial matter, the Court notes that a number of the allegations in the Complaint have been pleaded on information and belief.  *See generally* Compl.  In general, "conclusory allegations based on information and belief" are insufficient to support a finding of default-based

liability.  *J & J Sports Prods. Inc. v. Daley*, No. 06-CV-238, 2007 WL 7135707, at *3–4

(E.D.N.Y. Feb. 15, 2007); *Byrnes v. Eltman Law, P.C.,* CV 18-1485, 2019 WL 4578922, at *5

(E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted,* CV 18-1485, 2019 WL

4575380 (E.D.N.Y. Sept. 20, 2019).  However, allegations asserted on information and belief

may be sufficient to hold a defendant liable on a default judgment where such allegations state

facts primarily within the defendant's knowledge.  *See Joe Hand Promotions, Inc. v. Blais*, No.

11-CV-1214, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations

pled on information and belief in default judgment context) (citing *Fong v. United States*, 300

F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold

defendant individually liable on default judgment because they stated facts primarily within

defendant's knowledge)); *Sexy Hair Concepts, LLC v. Sexy Hair Inc*., No. 12-CV-3937, 2013

WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and

belief that defendant owned corporate entity and directed and controlled the activity of the

business in default judgment context) (citations omitted).  Because the facts pled on information

and belief are primarily within Defendants' knowledge, the Court will deem such facts admitted.

 Accepting all factual allegations in the Complaint as true, the Court finds that Plaintiff

has adequately stated a claim under ERISA against the corporation T.R. Whitney, but not against

individual Defendant Richard Whitney in his personal capacity.

   **a.**  **Corporate Defendant T.R. Whitney**

 Section 515 of ERISA, 29 U.S.C. § 1145, provides that "[e]very employer who is

obligated to make contributions to a multiemployer plan under the terms of the plan or under the

terms of a collectively bargained agreement ... make such contributions in accordance with the

terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Section 502 of

ERISA, 29 U.S.C. § 1132(a)(3), authorizes the trustees of a plan to bring an action in federal district court to enforce an employer's duty under § 515. *See* 29 U.S.C. § 1132(a)(3); *Flanagan v. Odessy Constr. Corp.*, No. 17-CV-1040, 2018 WL 1179889, at *5 (E.D.N.Y. Feb. 9, 2018), *report and recommendation adopted*, No. 17-CV-1040, 2018 WL 1175164 (E.D.N.Y. Mar. 6, 2018) (citing *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 312-13 (2d Cir. 1990)). In the instant action, Plaintiff, as Trustee, alleges that T.R. Whitney, an employer as defined by ERISA, entered into a CBA with the Union which obligated T.R. Whitney to pay contributions to the Fringe Benefit Funds. *See* Compl. ¶¶ 6-7, 9, 15. Plaintiff further alleges that T.R. Whitney failed to remit contributions to the Fringe Benefit Funds from January 7, 2013 through March 26, 2013. *See* Compl. ¶¶ 6, 20. Taking these factual allegations as true, Plaintiff has sufficiently set forth the elements of a claim for unpaid fringe benefit contributions under § 1145 of ERISA against T.R. Whitney. *See Bd. of Trustees of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc*., No. 15-CV-4901, 2016 WL 6775467, at *4 (E.D.N.Y. Aug. 15, 2016), *report and recommendation adopted sub nom. Bd. of Trustees of the United Union of Roofers v. Akro Gen. Contracting, Inc.*, No. 15-CV-4901, 2016 WL 6779487 (E.D.N.Y. Nov. 15, 2016) ("[F]actual allegations in the complaint that a defendant failed to comply with the provisions of a collective bargaining agreement establishing payment rules as required by ERISA and any applicable contracts are sufficient to establish an ERISA violation."); *Trustees of Local 813 Ins. Trust Fund v. Bradley Funeral Serv., Inc.,* No. 11-CV-2885, 2012 WL 3871759, at *3 (E.D.N.Y. Aug. 10, 2012), *report & recommendation adopted*, No. 11-CV-2885, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012) (finding that the complaint's "uncontested factual allegations are

sufficient to state a claim that defendant violated the terms of the CBA and, by extension, ERISA").

### a.        Individual Defendant Richard Whitney

Plaintiff also seeks to hold Richard Whitney personally liable for the ERISA violation committed by T.R. Whitney.  Compl. ¶¶ 11-14.  As a general matter, a corporate employer does not have a fiduciary obligation to make trust fund contributions; rather that obligation is contractual.  *Sasso v. Cervoni,* 985 F.2d 49, 51 (2d Cir. 1993) (citing 29 U.S.C. § 1002(21)(A)). Thus, absent special circumstances, an individual owner or officer "is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager."  *Id.* at 50; *see also Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15-CV-1171, 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016) ("Absent 'special circumstances,' individual officers are not personally liable for unpaid benefit contributions that should have been made by corporations under ERISA.") (quoting *Solomon v. R. Mignon & Sons, Inc.,* No. 94-CV-1344, 1994 WL 538617, at *2 (S.D.N.Y. Oct. 3, 1994)).  Courts have found "special circumstances" justifying individual liability in cases where the court can properly pierce the corporate veil and conclude the officer is the corporation's "alter ego," *Sasso*, 985 F.2d at 51, the defendant has committed fraud or acted in concert to breach a fiduciary obligation, *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 36–37 (2d Cir. 1994), *as amended* (Sept. 9, 1994), or where there was "clear and explicit evidence" of the parties" intent that the corporate officer be personally bound, *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,* 301 F.3d 50, 53 (2d Cir. 2002). *See also Gilday v. SDS Telecom Inc.,* No. 15-CV-6962, 2017 WL 1088292, at *4 (E.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, No. 15-CV-6962, 2017 WL 1082424 (E.D.N.Y.

Mar. 22, 2017) ("Courts have found special circumstances justifying individual liability in cases involving fraud or facts warranting piercing the corporate veil, or where there was 'clear and explicit evidence' of the parties' intent that the corporate officer be personally bound.") (internal citations omitted); *Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15-CV-1171, 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016) ("Courts have found 'special circumstances' justifying individual liability, however, when the defendant engaged in fraud related to the non-payment of benefit funds under ERISA, the corporation is the defendant's 'alter ego,' or when 'there [was] clear and explicit evidence' of the parties' intent that the individual defendant be personally bound.") (internal citations omitted).  Although Plaintiff failed to articulate the legal theory under which it seeks to hold Richard Whitney personally liable in its moving papers and does not plead any particular cause of action against Whitney, the Court nonetheless construes the Complaint to allege three distinct theories of individual liability against Richard Whitney.[2]

First, Plaintiff alleges that, upon information and belief, "defendants … wrongfully and fraudulently diverted [fringe benefit funds]."  Compl. ¶ 11.  To plead individual liability on the basis of fraud, a plaintiff must sufficiently allege that the individual is "a controlling corporate official," along with the elements of common law fraud.  *See Moore v. New York Concrete*

---

[2]      The Court notes that the Complaint does not make any allegations that Richard Whitney signed the Agreement in his individual capacity, or that the parties intended that Whitney would be "personally bound" by the terms of the Agreements.  *See Thomsen Constr. Co.,* 301 F.3d at 53.  The Complaint also does not allege that Whitney is a "fiduciary" under Section 409 of ERISA, 29 U.S.C. § 1109.  *See Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC,* No. 17-CV-6067, 2019 WL 2271942, at *7 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted as modified,* No. 17-CV-6067, 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019) ("Under Section 409 of ERISA, individuals who serve as fiduciaries of an ERISA plan may be held personally liable for breaches of their fiduciary duties.") (citing 29 U.S.C. § 1109(a)).  Therefore, the Court will not evaluate individual liability based on those theories.

*Corp.*, No. 18-CV-02791, 2019 WL 316402, at *5 (S.D.N.Y. Jan. 24, 2019); *Trustees of the United Plant v. C.P. Perma Paving Constr., Inc*., No. 15-CV-1171, 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016); *Solomon*, 1994 WL 538617, at *2 (citing *Lollo*, 35 F.3d at 36–37). Rule 9(b) also requires "particularity" in a fraud pleading. Here, the Complaint is devoid of any factual allegations that set forth the elements of common law fraud or demonstrate that Richard Whitney is "a controlling corporate official." Therefore, Plaintiff has failed to sufficiently set forth a valid claim for personal liability against Richard Whitney on the basis of fraud.

Second, Plaintiff alleges that, upon information and belief, "defendants knowingly participated in a fiduciary breach of ERISA trust obligations." Compl. ¶ 12. "The well-settled elements of a cause of action for participation in a breach of fiduciary duty are 1) breach by a fiduciary of a duty owed to plaintiff, 2) defendant's knowing participation in the breach, and 3) damages." *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 131 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 281–82 (2d Cir. 1992), *abrogated on other grounds by Gerosa v. Savasta & Co.,* 329 F.3d 317 (2d Cir. 2003)). Here, the Complaint does not contain any factual allegations which sufficiently set forth the elements of a claim for participation in a breach of fiduciary duty. Therefore, Plaintiff has not sufficiently set forth a valid claim for personal liability against Richard Whitney on this basis.

Finally, Plaintiff alleges that, upon information and belief, "defendants conspired to divert ERISA funds for personal benefit" and "intermingled personal and corporate assets." Compl. ¶¶ 13-14. Referencing *Sasso*, courts in this Circuit have considered "conspiring to divert ERISA funds for personal benefit" and "intermingling personal and corporate assets" as among the "special circumstances" under which the imposition of personal liability may be warranted.

*See Trustees of Sheet Metal Workers Int'l Ass'n Local No. 38 Ins. & Welfare Fund v. Haldean Sheet Metal Fabicators, Inc.,* No. 15-CV-5979, 2017 WL 5633164, at *7 (S.D.N.Y. Nov. 21, 2017) ("Special circumstances include (i) acting in concert with a fiduciary to breach a fiduciary obligation; (ii) intermingling personal and corporate assets; (iii) committing fraud; and (iv) where the individual is the corporation or the corporation's alter ego.") (citing *Sasso,* 985 F.2d at 50); *Util. Audit Grp. v. Capital One, N.A.,* No. CV 14-CV-0097, 2015 WL 1439695, at *9 (E.D.N.Y. Feb. 4, 2015), *report and recommendation adopted in part, rejected in part,* No. 14-CV-0097, 2015 WL 1439622 (E.D.N.Y. Mar. 26, 2015); *Finkel v. Frattarelli Bros.,* No. 05-CV-1551, 2008 WL 2483291, at *13 (E.D.N.Y. June 17, 2008) (same) (citing *Sasso,* 985 F.2d at 50); *Trustees of Bldg. Serv. 32B-J Pension, Health & Annuity Funds v. Hudson Serv. Corp.,* 871 F. Supp. 631, 638 (S.D.N.Y. 1994) (same) (citing *Sasso,* 985 F.2d at 50).  However, Plaintiff has not provided, and this Court is unaware of, any legal authority concluding that these allegations, standing alone, warrant the imposition of personal liability.  Generally, these allegations are among many that warrant piercing the corporate veil or concluding that the individual is the corporation's alter ego.  *See Sasso*, 985 F.2d at 50-51 (citing *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) (imposing personal liability for a "failure to disregard the corporate form" where the record demonstrated "extensive intermixing of assets . . .  without observing the appropriate formalities," "simultaneous sharing of employees and office space by the corporate and individual defendants," "wholly inadequate capitalization of the corporations," personal and active control and domination of corporations, and use of corporate assets for personal benefit instead of for meeting ERISA obligations)); *Nicholson v. Touchbase Glob. Servs., Inc.,* No. 18-CV-0426, 2019 WL 3716460, at *2 (E.D.N.Y. Feb. 26, 2019), *report and recommendation adopted sub nom. Nicholson v. Touchstone Glob. Servs., Inc.*, No. 18-CV-

00426, 2019 WL 3716027 (E.D.N.Y. Mar. 22, 2019); *Trustees of the Local 813 Pension Tr. Fund v. Canal Carting, Inc.*, No. 12-CV-0060, 2014 WL 843244, at *7 (E.D.N.Y. Mar. 4, 2014). In conducting a veil-piercing analysis, courts consider factors such as: "(1) the absence of the formalities which are part and parcel of normal corporate existence, *i.e.,* the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle." *Gilday,* 2017 WL 1088292, at *4 n.3 (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir. 1984).

While the allegations that Richard Whitney used ERISA funds for personal benefit and intermingled personal and corporate assets arguably support piercing the corporate veil, standing alone they are insufficient to form the basis for a piercing the corporate veil claim and the disregard of corporate form. *See Canal Carting, Inc.*, 2014 WL 843244, at *8 (declining to hold individual defendant personally liable for corporation's ERISA violation on default judgment where "[o]n balance, although a few facts arguably support piercing the corporate veil, including some personal use of funds by [defendant], plaintiffs have not established the existence of the requisite factors to justify veil piercing."); *Nicholson*, 2019 WL 3716460, at *2 (piercing the corporate veil to hold individual person liable for corporation's ERISA violation on default judgment where the complaint alleged that defendant personally dominated and controlled the corporations, transferred funds between defendant corporation and affiliated corporations, comingled personal and corporate accounts, utilized an identical corporate name with a corporation separately franchised in another jurisdiction with the fraudulent intent to avoid corporate obligations, diverted contributions for personal purposes, fraudulent inducement, and misrepresentations); *Canario v. Lidelco. Inc.,* 782 F. Supp. 749, 760 (E.D.N.Y.1992) (even

assuming that corporation's principal shareholder "purchased a plane using corporate funds and took personal income tax deductions for its depreciation[,]" such facts did not "rise to the level necessary to pierce the corporate veil"). For these reasons, even accepting the factual allegations in the Complaint as true, Plaintiff has failed to sufficiently set forth a valid claim for personal liability against the individual defendant Richard Whitney. *See Gilday,* 2017 WL 1088292, at *4 (recommending denial of default judgment where plaintiff did not sufficiently allege a valid claim for individual liability for corporation's ERISA violation).

## 2. *Prejudice*

The final factor for the Court to consider is whether Plaintiff would be prejudiced if the motion for default judgment were to be denied. Denying this motion would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3). If a default judgment is not granted, Plaintiff will have no alternative legal redress to recover the losses the Funds have sustained.

Because all three factors necessary to establish a default have been satisfied with respect to corporate Defendant T.R. Whitney, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for entry of default judgment be granted against Defendant T.R. Whitney. However, Plaintiff has not sufficiently alleged a valid claim for individual liability against Defendant Richard Whitney and, therefore, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for entry of default judgment be denied as against Defendant Richard Whitney.

**B.      Damages and Requested Relief**

Although a party's default is viewed as "a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound*, 973 F.2d at 158.  Therefore, once a party's default as to liability is established, a plaintiff still must prove damages.  *See Metro Found. Contractors, Inc.*, 669 F. 3d 230, 234 (2d Cir. 2012); *Gutman v. Klein*, No. 03-CV-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.").  The Court "may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence."  Fed. R. Civ. P. 55(b)(2).  However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and other documentary evidence" in support of its request.  *See Chanel, Inc. v. Louis*, No. 06-CV-5924, 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)).  On a motion for default judgment, a plaintiff has the burden of proving damages to the Court with "reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  Therefore, the only question remaining is whether Plaintiff has provided adequate support for the damages sought.  *See Gutman v. Klein*, No. 03-CV-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010), *report and recommendation adopted*, No. 03-CV-1570, 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), *aff'd,* 515 Fed. App'x 8 (2d Cir. 2013) ("The burden is on the plaintiff to establish its entitlement to recovery.")

Plaintiff seeks to recover damages in the amount of $24,766.64.  *See* LaVelle Decl. ¶ 12.  Specifically, Plaintiff requests that the Court award $15,828.79 in unpaid contributions,

$3,142.10 in interest, $3,165.75 in liquidated damages, $1,750 in attorneys' fees, and $880.00 in costs. *Id*. In support of the request for damages, Plaintiff has submitted, among other things, the following documentation: (1) the Declaration of William T. Lavelle, Esq.; (2) the Declaration of Allen Marmor, Benefit Funds Manager; (3) the CBA, annexed as Ex. D to the LaVelle Decl. [DE 21-4]; (4) shop steward time reports and paystubs detailing the number of hours worked by members of the General Building Laborers' Local Union No. 66 of the Laborers' International Union of North America, AFL-CIO ("Union") on behalf of Defendant T.R. Whitney ("Shop Steward Reports"), annexed as Ex. A to the LaVelle Decl. [DE 21-1]; (5) a schedule summarizing the hours worked, contributions rates applicable, and contributions which are owed under the CBA from July 1, 2012 to June 30, 2013 for the relevant employees ("Delinquency Spreadsheet"), annexed as Ex. B to the LaVelle Decl. [DE 21-2]; (6) a rate schedule for the contributions due under the CBA from July 1, 2012 to June 30, 2013 ("Rate Schedule"), annexed as Ex. C to the LaVelle Decl. [DE 21-3]; (7) the Internal Revenue Service ("IRS") interest rate table pursuant to 26 U.S.C. § 6621, annexed as Ex. E to the LaVelle Decl. [DE 21-5]; and (8) an itemization of attorneys' fees and costs incurred ("Attorneys' Fees and Costs Itemization"), annexed as Ex. F to the LaVelle Decl. [DE 21-6]. These reports and the other documents provided by Plaintiff are sufficient to allow the Court to assess the amount of damages owed by T.R. Whitney without holding a hearing. *See McGovern & Co*, 2019 WL 2271942, at *3.

### 1. Unpaid Benefits Contributions and Dues

The Declarations of LaVelle and Mamor, Plaintiff set forth unpaid contributions in the amount of $15,828.79 for the period running from January 7, 2013 to March 26, 2013. *See* LaVelle Decl. ¶¶ 4, 19; Mamor Decl. ¶ 10. When a judgment is entered in a plan's favor, the plan is entitled to recover the unpaid contributions. 29 U.S.C. § 1132(g)(2)(A); *see also* CBA,

19

Art. VI § 6(f)(A).  In support of the claim for unpaid contributions, Plaintiff submitted Shop

Steward Reports and a Delinquency Spreadsheet which provide the hours worked, contributions

rates applicable, and contributions owed under the CBA from July 1, 2012 to June 30, 2013 for

the relevant employees.  *See Bricklayers Ins. & Welfare Fund v. Verse Inc.*, No. 12-CV-4271,

2013 WL 4883966, at *6 (E.D.N.Y. Sept. 11, 2013) ("When plaintiffs are not able to conduct an

audit of a defendant's books and records, shop steward reports can support an award for

damages.") (citations omitted).  A Rate Schedule detailing the total fringe benefits package and

an allocation of those benefits to the various Funds under the CBA was also submitted.  In his

capacity as Benefit Funds Manager, Marmor states that he is fully familiar with the facts and

circumstances of this case and keeps records in the normal course of business regarding wages

and fringe benefit contributions.  Marmor Decl. ¶¶ 1-3.  According to Marmor, the Shop Steward

Reports, Delinquency Spreadsheet, and Rate Schedule are kept in the normal course of business.

*Id*. ¶¶ 4-6.  Marmor explains that the Delinquency Spreadsheet was generated from the

information contained in the shop steward reports and paystubs submitted.  *Id*. ¶ 8.

Based on the Rate Schedule, T.R. Whitney was required to make contributions to the

Funds in the amount of $30.67 for every hour worked by covered employees.  *See* Rate Schedule

at 1, Ex. C to LaVelle Decl.  The Delinquency Spreadsheet shows that contributions are owed for

a total of 515.4 hours worked.  *See* Delinquency Spreadsheet at 1, Ex. B to LaVelle Decl.

Multiplying the hours for which contributions are due (*i.e.,* 515.4) by the rate of contributions

owed per hour (*i.e.*, $30.67), yields a total amount of $15,807.32.  This figure is also reflected in

the Delinquency Spreadsheet which utilized the rates provided for in the Rate Schedule.  *Id*.  The

Court notes that there is a discrepancy between the unpaid contributions stated in the

Declarations of LaVelle and Mamor and those which are supported by the evidence.  While

20

Plaintiff does not provide any explanation for this discrepancy, it appears that the declarations' reference to $15,828.79 in unpaid contributions was inadvertent or a typo because elsewhere in Plaintiff's moving papers, such as the proposed order and notation of default, Plaintiff seeks $15,807.32 in unpaid contributions.  *See* Proposed Order for Default Judgment at 3; Notation of Default at 6.  The Court presumes based on the totality of the documentation that the $15,807.32 figure is the correct and accurate one.  Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded unpaid contributions in the amount of $15,807.32.

### 2.   *Interest on Unpaid Contributions*

Plaintiff seeks $3,142.10 in interest on the unpaid contributions accrued through November 6, 2019.  *See* LaVelle Decl. ¶¶ 7, 19; Mamor Decl. ¶ 13.  Under ERISA, a plaintiff is entitled to interest on unpaid contributions at "the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. Section 1132(g)(2)(B).  The CBA provides that interest on unpaid contributions is "determined by using the rate prescribed under Section 6621 of Title 26 of the United States Code."  CBA, Art. VI § 6(f)(B), Ex. D to LaVelle Decl.  The CBA further provides that interest on unpaid contributions accrues from "the date due until the date of payment at the rate prescribed under Section 6621 of Title 26 of the United States Code."  CBA, Art. VI § 6(e), Ex. D to LaVelle Decl.  Section 6621 prescribes an interest rate of 3% for the delinquency period from January 7, 2013 to March 26, 2013.  *See* Interest Rate Table, Ex. E to LaVelle Decl.  The Court has reviewed and accepts the methodology for calculating interest used by Plaintiff in the Declarations of LaVelle and Mamor.  *See* LaVelle Decl. ¶¶ 5-7; Mamor Decl. ¶¶ 11-13.  Plaintiff calculated the interest accrued by using the following formula:  [principal amount owed in unpaid contributions to the Funds over the delinquency period] × [interest rate] / [365 days] × [number of days from the end of the

delinquency period until the date of total interest accrual].  *See* LaVelle Decl. ¶ 7; Mamor Decl. ¶ 13.  The Lavelle Declaration points out that interest has been calculated from the last day of the delinquency period (*i.e.,* March 26, 2013) to November 6, 2019, and has not been compounded annually.  *Id*. ¶ 7.  Plaintiff elected November 6, 2019 as the accrual date and that date favors the corporate Defendant.  However, courts in this District routinely adopt a party's interest calculation even though it yields a number that is lower than that to which the party is actually entitled.  *See Odessy Constr. Corp.*, 2018 WL 1179889, at *8; *Flanagan v. North Star Concrete Const., Inc.*, No. 13-CV-2300, 2014 WL 4954615, at *9 (E.D.N.Y. 2014);  *DeLucia v. Gateway*, No. 10-CV-5705, 2011 WL 3511098, at *5 (E.D.N.Y. July 6, 2011) ("As plaintiffs are content to employ a simple methodology, thereby foregoing some potential interest owed, this Court sees no reason to do otherwise."), *report and recommendation adopted by* 2011 WL 3511051 (E.D.N.Y. Aug. 10, 2011); *DeLucia v. RTD Strategies, Inc.*, No. 07-CV-3967, 2009 WL 346972, at *3 (E.D.N.Y. Feb. 4, 2009) ("Because Plaintiffs seek a simple, non-annual interest rate of 5.25% that is well below the annual rate that they are entitled under ERISA, the undersigned finds that there is an adequate legal basis to award plaintiffs with prejudgment interest [in the amount sought].").

Applying the same methodology for the calculation of interest as Plaintiff, but utilizing $15,807.32 as the amount found to be owed in unpaid contributions, the Court finds that Plaintiff is entitled to $3,140.24 in interest accruing through November 6, 2019 -- the date of accrual requested by Plaintiff.  *See Bedasie v. Mr. Z Towing, Inc.*, No. 13-CV-5453, 2017 WL 1135727, *150 n.71 (E.D.N.Y. Mar. 24, 2017) (noting that while "[f]or purposes of clarity, the Court has represented the per diem interest amount as rounded to the nearest hundredth," the Court would use "un-rounded values in its calculations" so as to "calculate a more accurate amount for total

interest"). Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded interest on the unpaid contributions to the Funds in the amount of $3,140.24.

### 3. *Liquidated Damages*

Plaintiff seeks liquidated damages of $3,165.75 on the unpaid contributions. *See* LaVelle Decl. ¶¶ 7, 19; Mamor Decl. ¶ 13. ERISA provides for liquidated damages in an "amount equal to the greater of—(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The CBA provides that the "[e]mployer shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages." CBA, Art. VI § 6(i), Ex. D to LaVelle Decl.

This Court has found that Plaintiff is entitled to $15,807.32 in unpaid contributions, as well as interest in the amount of $3,140.24. Plaintiff asserts that calculating liquidated damages in accordance with the CBA at a rate of 12% annually would exceed 20% of the unpaid contributions. *See* LaVelle Decl. ¶ 9. As such, Plaintiff seeks liquidated damages in the amount of 20% of the unpaid contributions. *Id*. The Court has independently confirmed that the calculation of liquidated damages provided under the CBA would exceed 20% of the unpaid contributions awarded. Therefore, Plaintiff is entitled to 20% of the unpaid contributions as liquidated damages in the amount of $3,161.46 because that sum is greater than the interest on the unpaid contributions. Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded liquidated damages in the amount of $3,161.46.

23

### 4.  *Attorney's Fees*

Plaintiff seeks attorney's fees in the amount of $1,750.00.  *See* LaVelle Decl. ¶ 19.  The CBA provides that the employer shall pay the Funds "reasonable attorneys' fees and costs of the action" in the event that formal proceedings are initiated to collect delinquent contributions. CBA, Art. 6, § 6(f)(D), Ex. D to LaVelle Decl.  ERISA also mandates an award of "reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. § 1132(g)(2). Therefore, Plaintiff is both contractually and statutorily entitled to an award of attorneys' fees.

Both the Second Circuit and the Supreme Court have held that "the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2007)).  The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable, paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 183–84.  The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable.  *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing *Hensley*, 461 U.S. at 437). A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'"  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. Carlo Lizza & Sons Paving, Inc*., No. 19-CV-2461, 2019 WL 5694053, at *6 (E.D.N.Y. Aug. 22, 2019) (citing *Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle*

*Contracting Inc.*, No. 12-CV-0399, 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013), *adopted by* 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013)).

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See, e.g., Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *Joseph v. HDMJ Restaurant, Inc*., No. 09-CV-240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013); *Pinzon*, 2012 WL 4174725, at *5. Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *See LG Capital Funding, LLC v. 5Barz Int'l, Inc.,* No. 16-CV-2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)*; Am. Fire & Cas. Co. v. Scott Elec. Servs., LLC*, No. 15-CV-3111, 2017 WL 395207, at *2 (E.D.N.Y. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 374728 (E.D.N.Y. Jan. 25, 2017); *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016). Some courts in this District have awarded a higher range of $300 to $450 per hour for partners "in large law firms and for attorneys with extensive experience with the particular issues of a case." *Johnson v. City of New York*, No. 11-CV-6176, 2016 WL 590457, at *5 (E.D.N.Y. Feb. 11, 2016) (citation omitted); *see also Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (finding that "prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 an hour ... and some courts "have recognized slightly higher ranges in this district of $300–$450 per hour for

partners[.]") (collecting cases); *Feltzin v. Ciampa Whitepoint LLC*, No. 15-CV-2279, 2017 WL 570761, at *2 (E.D.N.Y. Feb. 13, 2017); *Volpe v. Nassau Cty.*, No. 12-CV-2416, 2016 WL 6238525, at *6 (E.D.N.Y. Oct. 24, 2016).

After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended, to determine a presumptively reasonable fee. *See Arbor Hill,* 522 F.3d at 183–84. To determine whether the number of hours spent by counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).

In the instant action, Plaintiff retained the services of LaVelle Law & Associates, P.C., located in Patchogue, New York. *See* LaVelle Decl. ¶ 1. Plaintiff has submitted the Declaration of Attorney LaVelle and contemporaneous billing records in support of the request for attorneys' fees. The contemporaneous billing records describe the specific tasks counsel performed on behalf of the Plaintiff, the dates on which the tasks were performed, and the amount of time expended. *See generally* Attorneys' Fees and Costs Itemization. These records reflect an expenditure of seven (7) hours by Attorney LaVelle on this matter at an hourly rate of $250.00. *Id*.

Attorney LaVelle, who was admitted to practice law in New York in 1988, is a member of LaVelle Law & Associates, P.C. and has been engaged in the practice of employee benefits law for approximately 23 years.  *See* LaVelle Decl. ¶ 1.  Based on Attorney LaVelle's background and experience, the Court finds that an hourly rate of $250 for his services falls squarely within the parameters found reasonable by other courts in this District for ERISA delinquent contributions litigation.  *See Odessy Constr. Corp.*, 2018 WL 1179889, at *10 (approving an hourly rate of $250 for Attorney LaVelle in ERISA action involving an unopposed motion for default judgment); *Akro Gen. Contracting, Inc.*, 2016 WL 6775467, at *9 (approving an hourly rate of $250 for attorney in ERISA matter involving an unopposed motion for default judgment); *Trs. of Metal Polishers Local 8A–28A Funds v. Superior Maintenance, Inc.,* No. 12-CV-0768, 2013 WL 8148381, at *3 (E.D.N.Y. Nov. 4, 2013) *report and recommendation adopted by* 2014 WL 1237195 (E.D.N.Y. Mar 25, 2014) (recommending an hourly rate of $250 for attorney with over 20 years of experience was reasonable and "in line with rates awarded in this area [ERISA] to counsel with comparable experience").  Further, the Court has reviewed the specific tasks Attorney LaVelle performed on behalf of the Plaintiff and finds that the 7.0 hours expended is reasonable.  The Court does not find any unreasonable, excessive, or unnecessary time which would warrant exclusion.

Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded $1,750.00 in attorneys' fees.

### 5.  *Costs*

Plaintiff seeks costs in the amount of $880.00.  *See* LaVelle Decl. ¶ 19.  Plaintiffs who prevail in an action under ERISA are entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'"  *Trs. of Plumbers Local Union No. 1 v. Temperini*

*Mech., Inc.*, No. 12-CV-05646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting *Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)); *see also* 29 U.S.C. 1132(g)(2).  The CBA also provides for the recovery of reasonable costs incurred by the Funds to be paid by the employer in the enforcement of a delinquent contributions action.  *See* CBA, Art. VI § 6(f)(D), Ex. D to LaVelle Decl.  The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested."  *Ganci v. U.S. Limousine Serv. Ltd.,* No. 10-CV-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (citation omitted).  In the absence of adequate substantiation, a party is not entitled to recover costs.  *See Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328 , 352 (E.D.N.Y. 2014) ("[W]ith this record, the Court has no way of confirming that these costs … were incurred by counsel."); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761, 2013 WL 2352855 , at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

Plaintiff seeks costs of $880.00, comprised of $400.00 for the filing fee, $445 for the process service fee, and $35 for the skip trace fee.  *See* Attorneys' Fees and Costs Itemization, Ex. F to LaVelle Decl.  In support of this request, Plaintiff has submitted invoices and receipts substantiating each of the costs incurred.  *See* Receipts of Costs, annexed as Ex. G to the LaVelle Decl. [DE 21-7].  The Court finds that the costs incurred are reasonable and should be awarded. Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded $880.00 in costs.

**V.   CONCLUSION**

For the foregoing reasons, this Court respectfully recommends to Judge Seybert that Plaintiff's motion for default judgment be GRANTED in part and DENIED in part.  With respect

to Defendant Richard D. Whitney, the Court respectfully recommends that entry of default judgment be DENIED.  With respect to Defendant T.R. Whitney Inc., the Court respectfully recommends that default judgment be GRANTED and that Plaintiff be awarded $22,989.02 be entered comprised of:  (1) $15,807.32 in unpaid contributions; (2) $3,140.24 in interest on the unpaid contributions; (3) $3,161.46 in liquidated damages; (4) $1,750 in attorney's fees; and (5) $880.00 in costs and disbursements.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections.** Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), *cert. denied,* 522 U.S. 883 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**Counsel for Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants forthwith by overnight mail and first-class mail and to file proof of such service on ECF by August 31, 2020**.

**SO ORDERED.**

Dated: Central Islip, New York
August 26, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge